UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ZIGZAG, LLC and<br>MARINA KOSTOCHKA,<br><br>        Plaintiffs,<br><br>        v.<br><br>JOHN KERRY, U.S. Secretary of State, and<br>JULIE KAVANAGH, Consul General of the<br>United States, Moscow, Russia,<br><br>        Defendants. | Civil Action No. 14-14118-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                       **March 10, 2015**

### I.  Introduction

Plaintiffs ZigZag, LLC ("ZigZag"), a Massachusetts company, and Marina Kostochka ("Kostochka"), an employee of a Russian-based affiliate of ZigZag (collectively, "Plaintiffs"), instituted this action seeking a writ of mandamus against Defendants John Kerry and Julie Kavanagh (collectively, "Defendants") pursuant to 28 U.S.C. § 1361 and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 (2)(A).  D. 1.  Plaintiffs seek to compel Defendants to conduct a visa interview for Kostochka at the U.S. Embassy in Moscow "in accordance with all legal requirements."  Id. at 9.  Plaintiffs have also moved for a preliminary injunction to enjoin Defendants from returning Kostochka's visa application to U.S. Citizenship and Immigration Services ("USCIS") pending the resolution of this action.  D. 2.  Defendants have moved to dismiss the complaint, arguing that under the doctrine of consular nonreviewability, the Court lacks the jurisdiction to review the decision of the consular officer in Moscow denying

1

Kostochka's visa. D. 10. For the reasons stated below, the Court DENIES Plaintiffs' motion for a preliminary injunction, D. 2, and ALLOWS Defendants' motion to dismiss, D. 10.

## II. Standard of Review

### A. <u>Preliminary Injunction</u>

To obtain a preliminary injunction, the party seeking the injunction must demonstrate: "1) a substantial likelihood of success on the merits, 2) a significant risk of irreparable harm if the injunction is withheld, 3) a favorable balance of hardships, and 4) a fit (or lack of friction) between the injunction and the public interest." <u>Nieves-Márquez v. Puerto Rico</u>, 353 F.3d 108, 120 (1st Cir. 2003) (citing <u>McGuire v. Reilly</u>, 260 F.3d 36, 42 (1st Cir. 2001)). A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." <u>Winter v. Natural Res. Def. Council, Inc.</u>, 555 U.S. 7, 22 (2008) (citing <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972 (1997)); <u>see also</u> <u>Voice of the Arab World Inc. v. MDTV Med. News Now, Inc.</u>, 645 F.3d 26, 32 (1st Cir. 2011) (labeling a preliminary injunction as an "extraordinary and drastic remedy") (quoting <u>Munaf v. Geren</u>, 553 U.S. 674, 689-90 (2008)).

### B. <u>Motion to Dismiss</u>

In considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court will dismiss a complaint or a claim that fails to plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). To state a plausible claim, a complaint need not contain detailed factual allegations, but it must recite facts sufficient to at least "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Id.</u> at 555. "In determining whether a complaint crosses the

plausibility threshold, 'the reviewing court [must] draw on its judicial experience and common sense.'" García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (alteration in original). "This context-specific inquiry does not demand 'a high degree of factual specificity.' Even so, the complaint 'must contain more than a rote recital of the elements of a cause of action.'" García-Catalán, 734 F.3d at 103 (internal citations omitted).

### III. Background

#### A. Factual Background

Unless otherwise noted, the Court summarizes the following facts as alleged in the complaint, D 1.

On May 8, 2014, ZigZag filed a non-immigrant worker visa petition (Form I-129) with USCIS to allow Kostochka to transfer from the Russian-based affiliate of ZigZag to a U.S. office. Id. ¶ 7. On October 2, 2014, USCIS approved Kostochka's L-1A visa petition classifying Plaintiff Kostochka as an intracompany transferee. Id. ¶¶ 1, 7. The approved petition entitled Kostochka to apply for an L visa under section 101(a)(15)(L) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(15)(L). D. 9 at 1. Kostochka subsequently filed an application for an L-1A visa with the U.S. Embassy's Consular Section in Moscow, Russia. D. 1 ¶ 8.

On October 29, 2014, Kostochka appeared for her visa interview with a copy of the approved I-129 petition, including the receipt number as per the instructions posted on the Consular Section's website. Id. ¶ 9. According to the Foreign Affairs Manual instructions to consular officers in adjudicating L visa applications, applicants are not required to provide their approved I-129 petition and "[a]ll petition approvals must be verified either through the Petition

Information Management Service (PIMS) or through the Person Centric Query Service (PCQS), in the CCD under the Cross Applications tab." Id. ¶ 11 (quoting 9 F.A.M. 41.54 N3.2). Once the petition approval has been verified, consular officers are instructed to "consider this as prima facie evidence that the requirements for L classification, which are examined in the petition process, have been met." Id. The consular officers "may not question the approval of L petitions without specific evidence, unavailable to DHS at the time of petition approval, that the beneficiary may not be entitled to status." Id.

During the interview, however, the consular officer allegedly stated that he did not have access to copies of Kostochka's L-1A petition and repeatedly asked her for copies of the documents that she had submitted to USCIS in support of her L-1A visa petition. Id. ¶ 10. The consular officer allegedly then "went on an extensive fishing expedition concerning Kostochka's prior immigration history and the birth of her child in the United States." Id. ¶ 22. The consular officer also challenged the USCIS approval of Kostochka's change of status while in the United States from B-2 (visitor) to F-1 (student). Id. ¶ 13. The consular officer informed Kostochka that "he could not understand how USCIS could have approved [her] L-1A visa petition" even though the officer admitted that he did not have access to the petition file. Id. ¶ 14.

At the conclusion of the interview, the officer concluded that USCIS's approval had been made in error and the officer refused to issue the visa to Kostochka. Id. ¶ 17. The officer provided Kostochka with a visa refusal letter, which stated that the case was being "sent back to DHS [Department of Homeland Security, i.e., USCIS] for reconsideration/revocation of petition."[1] Id. (quoting D. 1-8, Visa Refusal Letter). Although the officer did not provide Kostochka further reasons for the denial, later that day the Vice Consul of the American

---

[1] A consular officer who denies an L visa is required to return the petition to USCIS. See 22 C.F.R. § 41.54(c).

Embassy in Moscow, Gavin Piercy, informed Kostochka's counsel that "[a]fter considerable review, the Embassy has found compelling reason to send Mrs. Kostochka's nonimmigrant visa petition to USCIS with a memorandum for revocation." Id. ¶ 18 (quoting D. 1-9, Embassy Response Letter) and D. 1-9 at 2. The Vice Consul further stated that Kostochka's application would remain open pending internal deliberations and that as a final decision had not yet been reached, the Embassy was not required to provide detailed information before the case had been decided. See D. 9 at 3 (quoting D. 1-9).

### B. Procedural History

Plaintiffs commenced this action on November 8, 2014 seeking a writ of mandamus[2] pursuant to 28 U.S.C. § 1361 and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 (2)(A). D. 1. Plaintiffs subsequently moved for a preliminary injunction to enjoin Defendants from returning Kostochka's visa application to USCIS pending the resolution of this action. D. 2. Defendants opposed Plaintiffs' motion for a preliminary injunction, D. 9, and simultaneously moved to dismiss the action arguing that the Court lacks the jurisdiction to review the decision of the consular officer in Moscow denying Kostochka's visa. D. 1. On January 8, 2015, the Court heard argument on the pending motions and took the matters under advisement. D. 19.

## IV. Discussion

The INA, 8 U.S.C. § 1101 *et seq.*, contains "the terms and conditions under which aliens are permitted to enter the United States – either as visitors or immigrants" and apart from certain limited exceptions (not at issue here0, "an alien must apply for and obtain an immigrant or

---

[2]The Court notes that mandamus is a "drastic and extraordinary" remedy. Cheney v. U.S. Dist. Court for D.C., 542 U.S. 367, 380 (2004) (citing Ex parte Fahey, 332 U.S. 258, 259–260 (1947); see also Esteves Gonzales v. Embajada De La Republica Dominicana, 497 F. Supp. 2d 279, 280 (D.P.R. 2007) (noting that "[m]andamus is an extraordinary writ reserved for special situations"); In re City of Fall River, Mass., 470 F.3d 30, 32 (1st Cir. 2006) (same).

nonimmigrant visa prior to entering the United States." Adams v. Baker, 909 F.2d 643, 645 (1st Cir. 1990) (citing 8 U.S.C. §§ 1181(a) and 1182(a)(26)). Nonimmigrant visas, like the one sought by Kostochka, may be granted for a variety of reasons; however, it is the alien "who bears the burden of establishing 'that [she] is eligible to receive such a visa . . . or is not subject to exclusion under any provision of [the Act] . . .'" Id. (quoting 8 U.S.C. § 1361). And "[i]n no area is the scope of judicial inquiry more limited than the area of immigration legislation." Pishdadiyan v. Clinton, No. 11-CV-10723-JLT, 2012 WL 601907, at *7 (D. Mass. Feb. 7, 2012) (citations omitted).

### A. Under the Doctrine of Consular Nonreviewability, the Court May Not Review the Denial of Kostochka's Visa Application

Under the doctrine of consular nonreviewability, courts are generally not authorized to review the decisions of consular officers. Adams, 909 F.2d at 649 (explaining that "in the absence of statutory authorization or mandate from Congress, factual determinations made by consular officers in the visa issuance process are not subject to review by the Secretary of State, 8 U.S.C. § 1104(a)(1), and are similarly not reviewable by courts"); Saavedra Bruno v. Albright, 197 F.3d 1153, 1159–60, 1162–63 (D.C. Cir. 1999) (noting that "[t]he doctrine [of consular nonreviewability] holds that a consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise"). The doctrine provides that "irrespective of jurisdictional statutes or in the absence of constitutional issues, immigration disputes generally fall outside the jurisdiction of federal district courts." Pishdadiyan, 2012 WL 601907, at *13 (citing Chiang v. Skeirik, 582 F.3d 238, 242 (1st Cir. 2009)); United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 543 (1950) (citations omitted) (noting that "it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien"). And, due to "the political nature

of visa determinations and of the lack of any statute expressly authorizing judicial review of consular officers' actions, courts adhere to the view that consular visa determinations are not subject to judicial review." Pishdadiyan, 2012 WL 601907, at *13 (quoting Saavedra Bruno, 197 F.3d at 1159–60) (internal quotation marks omitted).

Plaintiffs argue, however, that the doctrine of consular nonreviewability should not apply to this case for two reasons. First, Plaintiffs argue that "[w]hen the court is reviewing the procedural validity of a consular action rather [than] a visa denial" the doctrine does not apply. D. 11 at 3. Next, Plaintiffs argue that under the exception articulated by the Supreme Court in Kleindienst v. Mandel, 408 U.S. 753, 762 (1972), the Court has authority to review visa denials that lack a "'facially legitimate and bona fide reason.'" D. 11 at 4-7 (quoting Mandel, 408 U.S. at 770).

1. *Allegations of Procedural Irregularities Do Not Circumvent the Doctrine of Consular Nonreviewability*

Plaintiffs' argument that they "are not seeking a review of a consular decision," D. 11 at 3, is unavailing. Plaintiffs contend that the consular officer who conducted Kostochka's visa interview committed multiple procedural and legal errors and, as a result, Kostochka "was never properly interviewed in connection with her L-1A visa application." D. 2 at 2. Plaintiffs allege, in part, that during the October 29, 2014 visa interview, the consular officer did not have access to Kostochka's L-1A visa file, which had been approved by USCIS, the officer asked Kostochka for documentation that she was not required to have and the officer asked Kostochka a series of inappropriate questions. D. 1 ¶¶ 10-15. Plaintiffs contend that due to the consular officer's allegedly improper behavior and the resulting alleged procedural violations, the denial of Kostochka's visa was not a "decision for purposes of the consular non-reviewability doctrine." D. 11 at 4.

7

In support of their argument, Plaintiffs rely on Patel v. Reno, 134 F.3d 929 (9th Cir. 1997), for the proposition that "[w]hen the suit challenges the authority of the consul to take or fail to take action as opposed to a decision taken with the consul's discretion, jurisdiction exists." D. 11 at 3 (quoting Patel, 134 F.3d at 931-32). In Patel, the plaintiffs' visa application had been pending before the U.S. Consulate in Bombay for eight years without any action and the plaintiffs brought suit challenging the authority of the consul to suspend their visa applications without any decision. Patel, 134 F.3d at 931-32. Here, the consul did not refuse to act, as was the case in Patel. Rather, on October 29, 2014, the consular office in Moscow refused Kostochka's visa application pursuant to INA § 221(g), instructing that the application be returned to DHS "for reconsideration/revocation of petition." D. 1 ¶ 17. Unlike in Patel, the consular office in this case took timely action in deciding to deny the visa application. Therefore, the doctrine of consular nonreviewability, which applies to the decisions of consular officers, is applicable. Furthermore, allegations of procedural irregularities and errors of law are not sufficient to circumvent the doctrine of consular non-reviewability and "[c]ourts will not review the decisions of consular officers even where those decisions are based on action unauthorized by the INA, on procedural irregularities or on errors of law." Pishdadiyan, 2012 WL 601907, at *13 (quoting Doan v. I.N.S., 990 F. Supp. 744, 746–47 (E.D. Mo. 1997)); see also Chiang, 582 F.3d at 242-43 (noting that "[i]t is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien") (quoting Knauff, 338 U.S. at 543).

### 2. *Mandel Review is not Applicable to Plaintiffs' Claim*

Moreover, Plaintiffs' reliance on the limited exception articulated in Mandel is misplaced. In that case, a Belgian Marxist journalist, Ernest Mandel, was invited by U.S. citizens to speak at an academic conference at a prominent American university. Mandel, 408 U.S. at 756-57. Mandel had been admitted to the United States twice before, however, "[o]n each occasion . . . his admission followed a finding of ineligibility under [§] 212(a)(28), and the Attorney General's exercise of discretion to admit him temporarily, on recommendation of the Secretary of State." Id. at 756. On this occasion, however, when Mandel's application was denied the Attorney General chose not to exercise his discretion to admit Mandel. Id. at 757-58. In response, Mandel and several American professors filed suit, challenging the denial of Mandel's visa and arguing, in part, that the denial "prevent[ed] them from hearing and meeting with Mandel in person for discussions, in contravention of the First Amendment." Id. at 759-60. The Mandel plaintiffs acknowledged the power of Congress to prohibit the entry of aliens, but argued that "by providing a waiver procedure" Congress intended that the waiver should be granted for "reasons of public interest" and, therefore, should be granted when U.S. citizens evidence a First Amendment interest. Id. at 767-68 (citing S. Rep. No. 1137, 82d Cong., 2d Sess., 12 (1952)). The Supreme Court, after reaffirming that "[t]he Court without exception has sustained Congress' plenary power to make rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden," id. at 766 (citation and internal quotation mark omitted), upheld the visa denial by the consulate, but in doing so held that:

> when the Executive exercises [the power to grant or deny a visa] negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the First Amendment interests of those who seek personal communication with the applicant.

9

Mandel, 408 U.S. at 770. In other words, the Supreme Court found only that a visa denial is unreviewable when the denial is based on "a facially legitimate and bona fide reason," id., "even if exclusion might impair the constitutionally protected interests of United States' citizens." Pishdadiyan, 2012 WL 601907, at *14 (citing Mandel, 408 U.S. at 770). The Court explicitly did not address whether a First Amendment claim should prevail "where no justification is advanced for denial of a waiver" because the Attorney General had provided Mandel's counsel a "facially legitimate and bona fide" reason. Mandel, 408 U.S. at 769-70.

In the wake of the Mandel decision, however, other courts, including courts in this circuit, have interpreted the decision as potentially providing for a limited exception to the doctrine of consular nonreviewability "when a consular official's denial of a visa petition infringes upon a constitutional right of an American citizen." Pishdadiyan, 2012 WL 601907, at *14; see also Chiang, 582 F.3d at 242-43 (affirming the district court's dismissal where plaintiff alleged a constitutional violation based on his right to marry a foreign national where there was no basis to conclude that a U.S. citizen had a constitutional right to have the marriage ceremony in the U.S. and "the Executive presented a 'facially legitimate and bona fide' reason for the denial"); Am. Sociological Ass'n v. Chertoff, 588 F. Supp. 2d 166, 169 (D. Mass. 2008) (citing Mandel, 408 U.S. at 770) (noting that Mandel established "one limited exception to the doctrine of consular nonreviewability that permits judicial review when the consular denial of a visa may impact the First Amendment rights of persons within the United States"); Allende v. Shultz, 845 F.2d 1111, 1114 (1st Cir.1988) (affirming the grant of summary judgment in plaintiffs' favor where plaintiffs raised First Amendment claim and the State Department had failed to advance a "facially legitimate and bona fide reason for exclusion"). Absent this limited exception for claims raising First Amendment issues, or perhaps for claims invoking other constitutional

rights, however, the doctrine of consular nonreviewability stands as a bar to judicial review. See e.g., Pishdadiyan, 2012 WL 601907, at *14.

As an initial matter, the Court notes that Kostochka, "as an unadmitted and nonresident alien," Mandel, 408 U.S. at 762, does not "have standing to seek either administrative or judicial review of the consular officer's decision to deny [her] a visa."[3] Adams, 909 F.2d at 647, n.3. So, "while it is permissible to join [Kostochka] as a symbolic plaintiff," id., the Court's focus is on the possible impairment of a U.S. citizen's constitutional rights. Therefore, ZigZag, as the organization whose constitutional rights would be implicated, "are the proper plaintiffs in a claim for Mandel review." Am. Sociological Ass'n, 588 F. Supp. 2d at 174.

Regardless, Mandel review requires ZigZag to allege, at minimum, some constitutional interest, if not a First Amendment challenge. See e.g., Chiang, 582 F.3d at 242 (noting that "[u]nder the doctrine of consular nonreviewability, in immigration disputes nonconstitutional issues are generally outside the jurisdiction of the courts"). ZigZag has made no such allegation here, see generally, D.1, and in the absence of a constitutional issue the Mandel exception is inapposite. Pishdadiyan, 2012 WL 601907, at *14 (explaining that "[a]bsent this limited

---

[3]Although not determinative here, the Court notes that at hearing Plaintiffs relied on Patel v. U.S. Citizenship and Immigration Services, 732 F.3d 633 (6th Cir. 2013) and Kurapati v. U.S. Bureau of Citizenship & Immigration Servs., No. 13-13554, 2014 WL 7242841 (11th Cir. Dec. 22, 2014) to argue that alien beneficiaries have standing to challenge adverse visa determinations. Those cases, however, did not address "unadmitted and nonresident alien[s]," Mandel, 408 U.S. at 762, denied visas by consular officers abroad, and the doctrine of consular nonreviewability did not apply. Those cases addressed only whether employee-beneficiaries, whose employer's employment-based visa petitions (I-140) are revoked or denied, have standing to challenge errors made by the defendant agencies. Kurapati, 2014 WL 7242841, at *5 (holding that the district court had jurisdiction to review plaintiffs' procedural arguments relating to their alleged right to be given notice and an opportunity to respond to the intent to revoke their employment-based visa); Patel v. U.S. Citizenship and Immigration Services, 732 F.3d at 636-38 (holding that a resident alien had standing to challenge the denial of his prospective employer's petition for an employment visa and emphasizing that approval of an employment-based petition makes the alien-employee eligible for a permanent visa rather than a temporary one).

exception for claims raising constitutional issues concerning visa denials, nonconstitutional issues are generally outside the jurisdiction of the courts") (citations and internal quotation marks omitted); Udugampola v. Jacobs, No. 13-CV-0460-BAH, 2014 WL 4809287, at *5 (D.D.C. Sept. 29, 2014) (noting that "[t]o establish entitlement to this limited exception to the consular nonreviewability doctrine, the plaintiffs bear the burden of demonstrating that the visa decision violated a constitutionally protected interest"). As a result, the limited review that is potentially authorized under Mandel is unavailable, and the doctrine of consular nonreviewability applies.

Although the treatment of Kostochka's visa application, at least as alleged in the complaint, may cry out for some remedy, given the clear application of the consular nonreviewability doctrine to this case, it is not a judicial one. Accordingly, the Court lacks the authority to review the consular officer's decision to deny Kostochka's visa application.[4]

### B. Plaintiffs Have Not Met Their Burden to Prevail on Their Motion for a Preliminary Injunction

As noted above, the Plaintiffs have moved for a preliminary injunction to enjoin Defendants from returning Kostochka's visa application to USCIS pending the resolution of this action. D. 2. Courts traditionally employ the well settled, four-part inquiry to determine whether an injunction should issue. González-Droz v. González-Colon, 573 F.3d 75, 79 (1st Cir. 2009). "The sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that [it] is likely to succeed in [its] quest, the remaining factors become

---

[4] Given the Court's conclusion regarding the application of the doctrine of nonreviewability to this case, the Court need not address Defendants' arguments that Plaintiffs have failed to exhaust their administrative remedies, D. 9 at 12-13. The Court notes, however, that the doctrine of consular nonreviewability stands as an exception to review under the APA. See, e.g., Pishdadiyan, 2012 WL 601907, at *15 (noting that [a]nalysis of the APA's language likewise shows that consular nonreviewability stands as one of the limited exceptions to review"); Saavedra, 197 F.3d at 1160 (interpreting section 702(1) to incorporate doctrine of consular nonreviewability).

12

matters of idle curiosity." New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002). In light of this Court's decision to ALLOW Defendants' motion to dismiss, Plaintiffs cannot demonstrate a likelihood of success on the merits. Accordingly, the Court need go no further, and Plaintiffs' motion for a preliminary injunction, D. 2, is DENIED.

**V.     Conclusion**

For these reasons, the Court DENIES Plaintiffs' motion for a preliminary injunction, D. 2, and ALLOWS Defendants' motion to dismiss, D. 10.

**So Ordered.**

/s/ Denise J. Casper  
United States District Judge